**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**ALEJANDRO BELLO,**

                    Petitioner,

**v.**                                                    **Civil Action No.: 2:18cv59**
                                                    **(Judge Bailey)**

**JENNIFER SAAD, Warden,**

                    Respondent.

**REPORT AND RECOMMENDATION**

## I.   INTRODUCTION

On June 11, 2018, Petitioner Alejandro Bello ("Petitioner"), acting *pro se*, filed a

Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition").

On that same date, Petitioner paid the $5 filing fee. On August 29, 2018, the Court

entered an Order to Show Cause why the Petition should not be granted. ECF No. 7.

On October 19, 2018, Respondent filed  a Motion to Dismiss the Petition or, in the

Alternative, a Motion for Summary Judgment. ECF No. 15. On October 30, 2018,

Respondent, by counsel, filed a Notice indicating that the Motion to Dismiss or for

Summary Judgment, together with the Memorandum in support had been mailed to

Petitioner at FCI Gilmer, his last known address, and was subsequently returned to

counsel as undeliverable. ECF No. 17. On November 13, 2018,  Petitioner filed a Notice

of Change of Address which reflected that he is now incarcerated at USP Terre Haute,

which is in Indiana. ECF No. 18. On November 14, 2018, the undersigned entered an

Order and Roseboro Notice [ECF No. 19], directing Respondent to resend his Motion

and Memorandum and informing the Petitioner of his right and obligation to respond to the Government's motion within sixty days. To date, the Petitioner has failed to respond. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II.    BACKGROUND

Petitioner is a federal inmate serving a 132 month term of imprisonment for his role in a robbery and conspiracy  to commit kidnapping. ECF No. 16-1 at 7. The sentence was imposed on May 21, 2014, in the United States District Court for the Southern District of New York. Id. His projected release date is April 21, 2022, via good conduct time. Id. at 8.

On February 20, 2018, a staff member at FCI Fort Dix discovered a 32 gigabyte ScanDisk electronic memory card in Petitioner's cell inside a radio that had his federal register number etched into it. ECF No. 16-1 at 10.  The discovery was made at 7:30 am, and  Petitioner received an incident report charging him with violating BOP Prohibited Act Code, 108, Possession of a Hazardous Tool at 11:00 am. Id.  The incident report was then forwarded to the Unit Disciplinary Committee ("UDC"). Petitioner made no comment to the UDC, and on February 21, 2019, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that should Petitioner be found guilty, he receive the maximum loss of Good Conduct Time ("GCT") plus 180 days loss of commissary and visiting privileges. ECF No. 16-1 at 11.

On February 21, 2018, Petitioner received Notice of a Disciplinary Hearing before

2

the disciplinary hearing officer ("DHO") [ECF No. 1-1 at 13] and a notice of Inmate Rights at Discipline Hearing. Id. at 15. Petitioner signed both forms and indicated that he did not wish to have a staff member represent him at the hearing and did not wish to call any witnesses. Id. at 13.  On February 27, 2018, the DHO held Petitioner's disciplinary hearing. Id. at 17.  Ultimately, the DHO found that Petitioner was guilty of the act as charged and sanctioned him with the loss of 40 days GCT, six months loss of email privileges, 6 months loss of phone privileges, 6 months loss of commissary privileges, and 6 months loss of visitation privileges. Id.   The DHO report was prepared on May 1, 2018 and delivered to Petitioner on May 25, 2018. Id. at 19.

The DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. at 18. Specifically, the DHO stated that he had relied upon, *inter alia*, the written statement of the reporting staff member, the Chain of Custody log, and Petitioner's statement that "I went to the Lieutenant's Office and my locker wasn't secure; Someone must have put it in my locker while I was gone." Id.  The report also included the reasons for Petitioner's sanctions. To illustrate, the report provided that:

> The action/behavior on the part of any inmate to manufacture, possess, or introduce into the institution, a tool or piece of equipment which may be used in an escape or escape attempt, poses a serious threat to the orderly operation and security of the institution, as well as to the health, safety and welfare of not only himself but to all other inmates and staff. Past escape attends involving these types of items have resulted in serious injuries, as well as desks, to both inmates and staff which cannot and will not be tolerated. Inmates with an intention to escape have proven to be dangerous. They are also attempting to break the law in their endeavor. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.
>
> The sanction involving the loss of Good Conduct Time was imposed to comply with the mandatory sanctioned requirement. The sanctions involving the loss of Email, Phone, Commissary, and Visiting are meant to

demonstrate the seriousness of this offense to you as well as everyone incarcerated at this facility.

ECF No. 16-1 at 18.

The DHO Report advised  Petitioner that he had the right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. Petitioner did not file an appeal.

### III  PLEADINGS

**A.     The Petition**

Petitioner asserts that the BOP violated his right to due process and violated the Accardi Doctrine. In support of this assertion, Petitioner alleges that the BOP failed to provide him with written findings of fact within the 20 day period, thereby failing to follow its own policy and preventing him from being able to appeal. ECF No. 1 at 5. For relief, Petitioner requests that his conviction for offense Code 108 be vacated, the incident be expunged from his prison record, and his good conduct time be restored. In addition, he requests that his privileges be restored and that his custody classification be re-scored appropriately. Id. at 8.

**B.     Respondent's Motion to Dismiss or for Summary Judgment**

Respondent advances the following arguments in response to the petition:

1.  Petitioner filed his habeas petition without first exhausting his administrative remedies, and he has not established that administrative review was unavailable or futile.

2.  Even if Petitioner had exhausted his administrative grievances, he has not pleaded a cognizable legal claim.

3.  To the extent the Petitioner  is challenging any  disciplinary sanction except

4

the loss of good conduct time, such a challenge is not cognizable in a habeas

petition.

4.  To the extent that Petitioner alleges that the BOP improperly changed his

security classification, that claim is not cognizable in a habeas petition

because it impacts the conditions of confinement and not the fact or duration

of his incarceration.

## IV. Legal Standard

### 1.    Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th

Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the

light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th

Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Courts long have cited the "rule that a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In

Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

2.    **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. DISCUSSION

A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit.  See McCling v. Shearin, 90 F. Appx. 444, 445 (4th Cir. 2004).  Moreover, the "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." Id.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within

20 days of receiving **written notification** of the disciplinary action. See 28 C.F.R. §
542.14(d)(2) (emphasis added).  If unsatisfied with that response, the petitioner may file
an appeal with the Central Office within 30 days of the date the Regional Director
signed the response. Id. Where an appeal is rejected at the Regional Level, and the
inmate is not given the opportunity to correct the defect and resubmit, the inmate may
appeal that rejection to the Central Office.  See 28 C.F.R. § 542.17(c).  The Central
Office may affirm the rejection, may direct the submission be accepted at the lower
level, or may accept the submission as filed. Id. "Appeal to the General Counsel is the
final administrative appeal." See 28 C.F.R. § 542.15(a).

Here, there is no dispute that Petitioner failed to exhaust his administrative
remedies regarding his disciplinary proceeding. Petitioner alleges that the BOP failed to
provide him with written findings of fact within the "20 day period," thereby failing to
follow its own policy and preventing him from being able to appeal.  Accordingly,
Petitioner maintains that the BOP violated the Accardi Doctrine[1].

Following a disciplinary hearing, BOP policy requires the DHO to provide the
inmate with a written report, **ordinarily** within 15 working days after the DHO makes
his/her decision. ECF No. 16-1 at 54. Therefore, the policy does not mandate that the
inmate received the report within 15 days or within any specified time. Therefore, there
is no violation of the Accardi Doctrine, and Petitioner's pending habeas petition is
subject to dismissal for failure to exhaust. Moreover, even if the Court were inclined to
excuse exhaustion, his petition fails to state a proper ground for relief.

---

[1] The Accardi Doctrine provides that when an agency fails to follow its own procedures or
regulations, that agency's actions are generally invalid. United States ex rel. Accardi v.
Shaughnessy, 347 U.S. 260, 268 (1954).

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1.    giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2.    providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3.    allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4.    permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5.    providing impartial fact finders.

Id. at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the due process required of disciplinary proceedings. First, Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing. Petitioner's disciplinary hearing was held on February 27, 2018, and he was provided with his Incident Report on February 21, 2018. Therefore, Petitioner received a copy of the Incident Report more than twenty-four hours before the disciplinary hearing.

Second, after the disciplinary hearing, Petitioner was provided with a report of what occurred during the hearing, which included the evidence upon which the DHO

9

had relied and the reasons for Petitioner's sanctions. Third, Petitioner was afforded the opportunity to call witnesses on his own behalf, which he declined, and to present a defense during the hearing. Fourth, Petitioner was advised of and declined his right to a staff representative during the hearing. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges. See 28 C.F.R. § 541.16(b).

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 457. In this case, the DHO found Petitioner had committed the act of possession of a hazardous tool, in violation of Prohibited Act Code § 108. Because the ScanDisk was found in Petitioner's locker, and his only defense was that someone must have put it there, the undersigned finds that the DHO's decision is supported by some evidence.

Finally, the undersigned notes that a petition for habeas corpus relief allows a federal inmate to seek "immediate release or a speedier release from" confinement. Presier v. Rodriquez, 411 U.S. 475, 498 (1973). Therefore a § 2241 claim only permits a petitioner to assert a liberty interest. In the instant case, aside from the loss of GCT, Petitioner's sanctions, including loss of commissary, phone and visitation privileges do not involve a liberty interest, because they do not impact the length of his confinement. Therefore, they do not state a claim for relief.

10

Likewise, to the extent that Petitioner alleges that the BOP improperly changed his security classification, the same is not cognizable in a habeas petition. A federal prisoner has no constitutional right to a specific custodial security classification. <u>Moody v. Daggert</u>, 429 U.S. 78, 88, n 9 (1978). An inmate's classification is administrative and prison officials can change an inmate's security classification "for almost any reason or no reason at all." <u>Brown v. Ratledge</u>, No. 7-16-CV-00303, 2017 WL 4404248, at *7 (W.D. Va. Sept. 29, 2017, <u>aff'd</u>, 709 F. Appx. 215 (4th Cir. 2018) (per curiam) (unpublished) (citations omitted). Moreover, any challenge to a custody or security classification is not cognizable in a 2241 habeas petition because such a challenge addresses the conditions of confinement and not the fact or duration of incarceration. <u>See</u> <u>Moore v. Driver</u>, No. 1:07CV166, 2008 WL 4661478, at 3 (N.D.W. Va. Oct. 21, 2008) (an inmate "cannot bring his claim regarding his custody classification in the context of § 2241 petition, because § 2241 petitions generally cannot be used to challenge conditions of confinement") (citing <u>Preiser</u>, 411 U.S. at 499-500).

## VI. <u>RECOMMENDATION</u>

For the foregoing reasons, it is hereby recommended that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 15] be **GRANTED**, and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District

Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATE:  February 19, 2019.


*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE